UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| PATRICIA A. STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:17-CV-251-TLS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Patricia A. Stewart seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her applications and erred by improperly weighing the record opinions of the treating physicians.

**BACKGROUND**

On April 29, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (R. 11.) Her claims were denied initially on June 30, 2014, and upon reconsideration on September 9, 2014. (*Id.*) On March 16, 2016, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id*.) A vocational expert, Charles H. McBee, also appeared and testified at the hearing. (*Id*.) On May 12, 2016, the ALJ denied the Plaintiff's applications, finding she was not disabled from her alleged onset date. (R. 11–21.) On April 17, 2017, the ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On June 16, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

**THE ALJ'S FINDINGS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff did not engage in SGA since her alleged disability onset date, April 1, 2014. (R. 13.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had one severe impairment, specifically degenerative disc disease of the lumbar spine with radiculopathy into the right lower extremity. (*Id.*) The ALJ also found that the Plaintiff had medically determinable, but non-severe, physical and mental impairments. (*Id.*) The Plaintiff's physical non-severe impairments were hyperlipidemia, hypertension, and

2

fibromyalgia. (*Id.*) The Plaintiff's mental non-severe impairments were major depression - single episode, generalized anxiety disorder, and alcohol use disorder. (R. 14).

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work with the following exceptions:

> [C]an occasionally climb ramps and stairs, she can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, and crawl. The [Plaintiff] should avoid concentrated exposure to hazards such as unprotected heights, slippery or uneven surfaces, and dangerous moving machinery.

(R. 16.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date to her date last insured. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 20.) However, the ALJ determined that the Plaintiff's "statements concerning the intensity,

persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) In making this credibility determination, the ALJ cited several medical factors. First, the ALJ noted that the MRI performed on April 14, 2014, showed only mild hypertrophic changes in the facet joints of L1-S1 with no significant neurological involvement. Next, the ALJ said that while the EMG was consistent with chronic right L5 radiculopathy, "EMGs do not assess functionality." Finally, "[i]n contrast to the [Plaintiff's] allegations," the ALJ described that "the consultative examiner noted a stable gait, full range of motion, five out of five strength, and normal gait maneuvers." (*Id.*)

The ALJ addressed the opinion evidence of two physicians: Dr. Booth, the Plaintiff's primary doctor, and Dr. Kamineni, a consultative examiner. The ALJ found the following with respect to Dr. Booth's opinion:

> Dr. Booth, the claimant's treating doctor, opined on August 12, 2014, that the claimant had been treated for low back pain and had difficulty working and performing every day chores (Exhibit 11F). The undersigned gives some weight to the opinion of Dr. Booth, as reflected in the residual functional capacity first stated above. However, without specific limitations, the opinion is not helpful in determining the claimant's functional limitations. The treating records and objective evidence do not suggest a further reduction to sedentary level work.

(R. 19.) Further, the ALJ gave Dr. Kamineni's opinion "little to no weight," because "[t]his opinion appears to be a recitation of the [Plaintiff]'s allegations and subjective statements for the most part. The actual clinical findings by Dr. Kamineni were benign and unremarkable. The objective evidence does not support these extreme limitations." (*Id.*)

The Plaintiff had past relevant work as a cashier, which is unskilled, light work. (R. 20.) The ALJ found that the Plaintiff could perform her past relevant work. (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 21.)

4

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address

every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues only that the ALJ erred by improperly weighing the record opinions of the treating physicians.[1]

Generally, controlling weight is given to the treating physician's opinion only if it is well-supported by medically acceptable, objective evidence and consistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—then the ALJ should move on to assessing the value of the opinion in the same way she would any other medical evidence, *see id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the

---

[1] Because the Court is remanding on the basis of the ALJ's treatment of Dr. Booth's opinion, it need not consider the other physicians discussed in the parties' arguments.

6

ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "minimally articulate[d]" her reasons. *Berger*, 516 F.3d at 545 (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

It is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight. *See Clifford*, 227 F.3d at 869 ("[W]e review the entire record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, an ALJ must give "good reasons" for the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight*, 55 F.3d at 314 (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

Dr. Booth, the Plaintiff's treating physician, offered the following opinion: "[Plaintiff] is a patient under my care. She has been seen and treated for chronic low back pain. She has difficulty working and performing everyday chores due to her back pain." (R. 436.) The ALJ found the following with respect to Dr. Booth's opinion:

> The undersigned gives some weight to the opinion of Dr. Booth, as reflected in the residual functional capacity first stated above. However, without specific limitations, the opinion is not helpful in determining the claimant's functional limitations. The treating records and objective evidence do not suggest a further reduction to sedentary level work.

(R. 19.) The ALJ did not properly analyze what weight to give the opinion.

The ALJ did not identify why she did not give the opinion controlling weight. "When controlling weight is not given, an ALJ must offer 'good reasons' for doing so, after having considered [the regulatory factors]." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The Seventh Circuit has said that,

> "Even if there were sound reasons for refusing to give [the treating physician's] opinions controlling weight, the ALJ still erred by assigning [the] opinions little weight without considering relevant regulatory factors under 20 C.F.R. § 404.1527(c). ALJs must decide the weight of a treating physician's non-controlling opinion by considering, to the extent applicable, the treatment relationship's length, nature, and extent; the opinion's consistency with other evidence; the explanatory support for the opinion; and any specialty of the treating physician."

*Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018); *see also Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("[E]ven assuming that there had been a reason to deny controlling weight to [the treating physician's] opinion, the ALJ was not permitted to simply discard it. . . . Rather, the ALJ was required to explicitly consider the details of the treatment relationship and explain the weight he was giving the opinion.") (citing *Scrogham*, 765 F.3d at 697, and *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (internal quotation marks omitted)). While the ALJ offers some explanation, she does not do so in a way that adequately addresses any regulatory factors.

The ALJ first explains Dr. Booth's opinion "is not helpful in determining the claimant's functional limitations." (R. 19.) However, in the immediately preceding sentence the ALJ stated that her assignment of "some weight" to the opinion was "reflected in the [RFC]." If the ALJ is discounting the opinion because it was not helpful in determining the claimant's functional limitations, the Court cannot follow how the ALJ gave the opinion some weight and reflected it in her RFC. While the ALJ could fairly consider the ill-defined and nonspecific quality of Dr.

Booth's opinion under the regulatory factors, *see, e.g.*, 20 C.F.R. § 404.1527(c)(3),[2] the ALJ's contradictory discussion fails to make the necessary logical bridge between the opinion and her conclusions. At the same time, because the ALJ's discussion links her consideration of Dr. Booth's opinion to the RFC, the ALJ's flawed analysis potentially impacted the rest of the decision.

The second reason the ALJ offers is that, "[t]he treating records and objective evidence do not suggest a further reduction to sedentary level work." (R. 19.) Because the ALJ references the treating record and objective evidence, the Court presumes the ALJ intended to address the third and/or fourth factors as identified in the regulations, which respectively address "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings" and consistency "with the record as a whole[.]" *Scrogham v. Colvin*, 765 F.3d 685 (7th Cir. 2014) (citing § 404.1527(c)(3)–(4)). But the Court is forced to guess, because the ALJ does not explain how the relevant medical evidence or the record as a whole is contradictory with sedentary work or with Dr. Booth's opinion. Thus, she has not sufficiently addressed either factor. *See Landez v. Astrue*, No. 1:11-CV-00246, 2012 WL 1409365, at *8 n.4 (N.D. Ind. Apr. 23, 2012) ("The Court, however, should not be forced to speculate about the ALJ's reasoning—an ALJ must minimally articulate her reasoning so that a court can perform a meaningful review."); *see also Brown*, 845 F.3d at 253 ("And even assuming that some of [the treating physician's] opinions were not fully corroborated by his treatment records, the ALJ cited no evidence that *contradicted* the opinions.").

Moreover, despite its applicability, the ALJ does not discuss the objective evidence in the record that supports a finding of further limitations, compounding her failure to fully articulate

---

[2] "The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).

her analysis under the factors. First, the EMG supports chronic right L5 radiculopathy, which is consistent with Dr. Booth's opinion that the Plaintiff suffers from "chronic low back pain." Second, while the ALJ describes Dr. Booth as noting the Plaintiff's MRI was "normal," it is unclear from the records whether this was Dr. Booth's opinion, or the opinion of Dr. Bessette, who appears to have read the MRI. (R. 359, 353.) A second doctor, Shugart, also seems to have disagreed, describing the MRI as "show[ing] a little bit of stenosis at 4-5, but mild." (R. 391.) The ALJ does not discuss the EMG or address the various opinions on the MRI in evidence.

The ALJ could have rejected Dr. Booth's opinion within the appropriate framework, but she did not do so. Instead, the ALJ's analysis has internal contradictions which imply it impacted her ultimate decision with respect to the RFC, ignores objective evidence that supports Dr. Booth's opinion, and fails to explicitly address the regulatory factors.[3] Thus, the Court cannot say the ALJ built a logical bridge between her conclusion and her treatment of the evidence. Because the regulations require the ALJ to consider medical opinions, and because the ALJ says her analysis impacted the RFC, the ALJ's reasoning is flawed enough to require a remand. *See Rajski v. Colvin*, No. 3:14-CV-1477, 2015 WL 5730102, at *9 (N.D. Ind. Sept. 30, 2015) (remanding because a more thorough analysis of the factors was necessary to understand the ALJ's rationale, and collecting cases on same); *Hochstetler v. Colvin*, No. 3:13-CV-662, 2014 WL 4449917, at *11 (N.D. Ind. Sept. 9, 2014) (remanding because the ALJ's failure to give

---

[3] If the "decision makes clear that [the ALJ] was aware of and considered many of the factors," the ALJ need not consider each and every factor; instead, the "inquiry is limited to whether the ALJ sufficiently accounted for the factors . . . and built an 'accurate and logical bridge' between the evidence and his conclusion." *Schreiber v. Colvin*, 516 F. App'x 951, 959 (7th Cir. 2013) (citing *Elder*, 529 F.3d at 415–16 (affirming ALJ's decision where ALJ discussed only two of the factors)). However, the Court cannot say the ALJ here sufficiently accounted for any of the factors, and the ALJ did not build an accurate and logical bridge between the evidence and her conclusion.

good reasons when discounting the medical opinion of treating physician affected the Plaintiff's RFC).

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. On remand, the ALJ is encouraged to examine whether the logical bridge between relevant evidence, including the Plaintiff's own testimony, and her conclusions has been established.

SO ORDERED on June 22, 2018.

                                                    s/ Theresa L. Springmann
                                                  CHIEF JUDGE THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT